**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-6423

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GEORGE MCLEOD, III, a/k/a Pimp Stick Quezzy,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, Columbia. Cameron McGowan Currie, Senior District Judge. (3:12-cr-00329-CMC-1)

Submitted: May 29, 2020                    Decided: August 27, 2020

Before GREGORY, Chief Judge, and MOTZ and AGEE, Circuit Judges.

Dismissed by published opinion. Judge Motz wrote the opinion, in which Chief Judge Gregory joined. Judge Agee wrote an opinion concurring in the judgment.

Maya M. Eckstein, Joshua Hanbury, Richmond, Virginia, Nicholas D. Stellakis, HUNTON ANDREWS KURTH LLP, Boston, Massachusetts, for Appellant. Sherri A. Lydon, United States Attorney, T. DeWayne Pearson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

George McLeod III pleaded guilty to two counts related to his role in a commercial sex operation and received a sentence of 70 months' imprisonment and five years' supervised release. As a condition of supervised release, the district court required that he register as a sex offender. McLeod did not appeal any portion of his sentence. Upon completion of his term of imprisonment, McLeod moved, pursuant to 18 U.S.C. § 3583(e)(2), to modify the conditions of his supervised release, contending that the sex offender registration condition was illegal as applied to his offense of conviction. When the district court denied the motion, he noted this appeal. For the reasons that follow, we dismiss the appeal.

I.

In 2013, the Government charged McLeod in a multicount second superseding indictment, alleging that he operated an escort service that offered women for commercial sex and, as part of his activities, recruited a minor to cross state lines to work for him. McLeod assertedly obtained false identification for the minor to facilitate her employment at a strip club, where she solicited clients for sex.

Pursuant to a written agreement, McLeod pleaded guilty to one count of interstate transportation for the purpose of prostitution (Count 7) and one count of aggravated identity

theft (Count 6).[1]  The plea agreement made no reference to a requirement that McLeod register as a sex offender.

During the plea colloquy, the Government noted that McLeod's plea "to Count Seven [interstate transportation for the purpose of prostitution] may require registry on the sex offender registry."  The district court then confirmed that McLeod understood that "it is possible that if you plead guilty, you may have to register as a sex offender" pursuant to the Sex Offender Registration and Notification Act (SORNA).

At sentencing, the court noted that McLeod "had indicated earlier you might want to challenge the applicability of that particular sex offender registration and supervised release period."  It recognized that, at the plea colloquy, it had not correctly advised McLeod of either the length of supervised release or properly counseled him that he would be required to register as a sex offender.  The court further stated that, after the presentence report disseminated the correct information, the court notified counsel of these issues.  Upon explaining the sex offender registration requirement, the court addressed McLeod directly:

> So, let me ask you, Mr. McLeod, those two issues that weren't correctly stated at the time of your guilty plea — one was that that supervised release period range is from a minimum of five years to a maximum of life, and [the other] that the sex offender registration applies to this conviction, you have

---

[1] Count 7 involved conduct between April 2010 and August 2011, but the indictment on this count did not reference the minor and the Government apparently told the court that Count 7 was not intended to and in fact did not include conduct related to the minor. McLeod maintained that the minor victim did not meet him until September 2011 and had no connection with Count 7.  At sentencing, the district court sustained McLeod's objection that, for purposes of calculating McLeod's Sentencing Guidelines range, conduct involving the minor was not "relevant conduct" with respect to Count 7.  Consequently, the district court struck several paragraphs of the presentence report.

3

now been told that, is it your wish to go forward and affirm your guilty plea, or do you wish to withdraw your guilty plea?

McLeod answered that he wished to affirm the guilty plea and verified he had spoken with counsel about the matter. The district court then sentenced McLeod to 70 months' imprisonment and five years' supervised release. As a condition of supervised release, the court required that McLeod register as a sex offender.

In 2018, after being released from prison but while still on supervised release, McLeod filed a pro se motion pursuant to 18 U.S.C. § 3583(e)(2) asking the district court to eliminate the requirement that he register as a sex offender because, he argued, the offense for which he was convicted did not qualify as a sex offense as defined by SORNA. The district court denied the motion on the merits. Agreeing with McLeod that his conviction on Count 7 (interstate transportation for the purpose of prostitution) was not a sex offense requiring registration because it involved consenting adults, the court explained that McLeod nonetheless was required to register based on his conviction on Count 6 (aggravated identity theft), because that crime constituted a "specified offense against a minor." 34 U.S.C. § 20911(5)(A)(ii) (defining "sex offense" to include "a criminal offense that is a specified offense against a minor"). McLeod timely noted this appeal.

II.

McLeod's plea agreement contains a provision waiving "the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255." The Government contends this waiver

4

bars our consideration of this appeal. Whether a defendant's waiver is enforceable presents a question of law we review de novo. *United States v. Manigan*, 592 F.3d 621, 626 (4th Cir. 2010).

We generally enforce an appeal waiver if the Government timely seeks enforcement of a waiver that it has not breached, the waiver is valid (that is, the waiver is the result of a knowing and intelligent decision to forgo the right to appeal), and the challenge is within the scope of the waiver. *See United States v. Blick*, 408 F.3d 162, 168–69 (4th Cir. 2005); *see also United States v. Attar*, 38 F.3d 727, 731–33 (4th Cir. 1994).

McLeod argues that his challenge is not within the scope of the waiver because it assertedly does not encompass motions under 18 U.S.C. § 3583(e)(2). The Government argues that McLeod's challenge clearly is within the scope of McLeod's broad waiver of his right to "*contest* either the conviction or the sentence in *any* direct appeal or other postconviction action" (emphases added).

Even assuming McLeod's challenge lies within in the scope of the waiver, however, we cannot enforce it. This is so because even "[a]n express knowing waiver will not bar appeal of a sentence when the sentence was . . . imposed in excess of the maximum penalty provided by law." *United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000); *see also United States v. Beck*, 957 F.3d 440, 445 (4th Cir. 2020); *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992).

Thus, in *United States v. Broughton-Jones*, 71 F.3d 1143 (4th Cir. 1995), we refused to enforce a waiver when the defendant challenged her restitution order, imposed pursuant to the Victim and Witness Protection Act, 18 U.S.C. § 3663–64 (VWPA), on the ground

5

that the VWPA did not permit restitution for her offense of conviction. We held, "[b]ecause a restitution order imposed when it is not authorized by the [underlying statute] is no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum, appeals challenging the legality of restitution orders are similarly outside the scope of a defendant's otherwise valid appeal waiver." *Id.* at 1147. A restitution order, like supervised release, is a part of a defendant's criminal sentence. *See United States v. Grant*, 715 F.3d 552, 554 (4th Cir. 2013). Here, McLeod maintains that the district court exceeded its authority under SORNA by requiring registration based on his offense, just as Broughton-Jones asserted that the district court exceeded its authority under the VWPA in imposing a restitution order based on her offense. We can see no difference for these purposes between a restitution order that is allegedly unauthorized by statute and a registration requirement that is allegedly unauthorized by statute. We so held in an unpublished opinion. *See United States v. Sims*, 410 F. App'x 666, 669–70 (4th Cir. 2011) (refusing to enforce an appeal waiver where a defendant alleged that requiring him to register as a sex offender was not authorized by law given his offense). As in that case, *Broughton-Jones* controls. Thus, we cannot enforce the appeal waiver.

## III.

We turn to the Government's contention that we must dismiss McLeod's appeal because a motion pursuant to 18 U.S.C. § 3583(e)(2) cannot be used to challenge the terms or conditions of supervised release on the ground that they are unlawful.

6

A.

Section 3583 concerns supervised release, a post-incarceration program intended "to assist individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000). When a sentencing court considers whether to impose a term of supervised release, and the duration and conditions of that release, § 3583(c) instructs the court to employ a slightly modified version of the general "framework for sentencing decisions" established by § 3553(a). *United States v. Burden*, 860 F.3d 45, 56 (2d Cir. 2017). Section 3583(c) specifies that the court must consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). When a district court considers whether to modify or revoke a condition of supervised release, § 3583(e) authorizes the court to consider the same § 3553(a) factors enumerated in § 3583(c).

These factors are: the circumstances of the crime; the history and characteristics of the defendant; the need for deterrence; protection of the public; provision of educational or vocational training, medical care, or other treatment; the kinds of sentence and the sentencing range established by the Sentencing Commission and Congress; the relevant policy statements of the U.S. Sentencing Commission; the need to avoid disparities among defendants with similar records and similar conduct of guilt; and the need to provide restitution to the victim. The invocation of these capacious factors in both subsections (c) and (e) signals that Congress intended to give district courts broad authority to impose, modify, and revoke conditions of supervised release, as necessary, tailored to the specific and individual circumstances of each defendant. *See, e.g.*, *United States v. Allen*, 2 F.3d

7

538, 539 (4th Cir. 1993) (recognizing broad authority of district courts to modify the conditions of release).

B.

McLeod's motion for modification attacked the registration requirement on the ground that it was unlawful, using a motion under § 3583(e)(2) as a pathway to bring such a challenge presumably because other pathways (including a direct appeal) are now foreclosed.

A number of courts have considered whether such a challenge is cognizable pursuant to § 3583(e)(2), and the majority have concluded that it is not. *See, e.g.*, *United States v. Faber*, 950 F.3d 356, 358–59 (6th Cir. 2020); *United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002); *United States v. Hatten*, 167 F.3d 884, 886 (5th Cir. 1999); *United States v. Lussier*, 104 F.3d 32, 34–37 (2d Cir. 1997); *United States v. McClamma*, 676 F. App'x 944, 947–48 (11th Cir. 2017); *United States v. Diggs*, No. PX-15-0228, 2018 WL 3642742, at *2–3 (D. Md. July 31, 2018); *United States v. Wilson*, No. 5:96-cr-30056-1, 2018 WL 563846, at *1 (W.D. Va. Jan. 25, 2018).[2]

These cases generally draw on two arguments to conclude that asserted illegality does not provide a proper ground for a § 3583(e)(2) motion. First, they interpret § 3583(e)'s enumerated factors as an *exclusive* list of the factors that the district court "may . . . consider[]." *See, e.g.*, *Lussier*, 104 F.3d at 35 ("Conspicuously absent from the

---

[2] McLeod contends that *Hatten* has been called into question by *United States v. Mendoza-Velasquez*, 847 F.3d 209 (5th Cir. 2017). Br. at 10. But the defendant in *Mendoza-Velasquez* did not challenge the *legality* of the condition at issue, only whether that condition was appropriate to his unique circumstances.

8

list of relevant considerations [in § 3582(e)] is the legality of the condition.").[3] This interpretation is bolstered by the contrast between § 3583(e) and 18 U.S.C. § 3742(a)(1), the general provision authorizing appellate review of sentences, which authorizes defendants to seek review of an otherwise final sentence if it "was imposed in violation of law."

Second, these courts emphasize that permitting a challenge to the legality of a condition of supervised release would undermine the overall "scheme of appellate and collateral review" established by Congress. *Lussier*, 104 F.3d at 36. Congress has provided multiple avenues for review of the legality of a sentence, most of which are time-limited — for example, direct appeals by a defendant must be taken within fourteen days, *see* Fed. R. App. P. 4(b), while habeas corpus petitions must be filed within one year, *see* 28 U.S.C. § 2255(f). Allowing individuals to contest the legality of their original sentences at any time via a § 3583(e)(2) motion would allow an end run around these other detailed provisions providing appellate review of an original sentence. As the Ninth Circuit explained, "[i]t would frustrate Congress's intent . . . to interpret § 3583(e)(2) to authorize a district court to modify or rescind an allegedly illegal condition." *Gross*, 307 F.3d at 1044.

---

[3] McLeod relies upon *United States v. Webb*, 738 F.3d 638, 641–42 (4th Cir. 2013). But in *Webb*, we only held that a district did not plainly err by reference to a non-enumerated § 3553(a) factor in imposing a revocation sentence because this factor was intertwined with the enumerated factors. This holding hardly constitutes an embrace of McLeod's position in this case.

The Seventh Circuit has rejected this reasoning, holding that individuals may, in some circumstances, challenge the legality of a condition of supervised release pursuant to § 3583(e)(2), even long after the time for appellate review has ended. *See United States v. Neal*, 810 F.3d 512, 518 (7th Cir. 2016). The Seventh Circuit reasoned that allowing such actions is consistent with the text of the statute because the enumerated § 3553(a) factors do not constitute an exclusive list of factors the district court may consider, and because the statute authorizes modification "at any time." Moreover, it concluded that such an interpretation is in keeping with Congress's intent that supervised release serve primarily rehabilitative purposes. *Id.* at 516, 518–20.

Although the Seventh Circuit did not articulate its rationale in these terms, its analysis seems to rest on the different role that finality plays in effectuating congressional policies when considering terms of imprisonment rather than terms and conditions of supervised release. While finality contributes to the punitive and incapacitating purposes of incarceration, finality can undermine the rehabilitative goals of supervised release by complicating a formerly incarcerated person's transition back into society. Whereas Congress prioritized finality when it comes to terms of incarceration, as evidenced by the strict, time-limited provisions for appellate and collateral review of sentences, Congress has made a different policy choice when it comes to § 3583(e)(2), as evidenced by that statute's authorization to file such motions "at any time." Thus, as conditions of supervised release may be imposed years or even decades in advance of reentry, Congress chose in § 3583(e)(2) to enable successful reintegration by prioritizing flexibility ("at any time") rather than finality.

10

There is, we believe, more common ground among the circuits than it might appear. On one hand, courts that prohibit using § 3583(e)(2) to challenge the legality of a condition of supervised release broadly recognize Congress's prioritization of flexibility, squarely noting that changed circumstances would allow a court to modify a term of supervised release pursuant to § 3583(e)(2). *See Faber*, 950 F.3d at 359 ("Section 3583(e)(2) allows district courts to adjust supervised release conditions to account for new or unforeseen circumstances."); *United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000) (holding that a motion for modification pursuant to § 3583(e)(2) was proper in light of changed circumstances); *Lussier*, 104 F.3d at 36 ("Section 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release . . . in order to account for new or unforeseen circumstances."); *see also United States v. Roberts*, 229 F. App'x 172, 177, 178 (3d Cir. 2007) (recognizing that a direct challenge to the legality of a sentence would be "impermissible," but that requests for modification or clarification based on "new or unforeseen circumstances" and challenges to the unreasonable or arbitrary application of conditions of supervised release were authorized).

On the other hand, despite its more generous approach, the Seventh Circuit did not purport to hold that § 3583(e)(2) authorized *every* challenge to the legality of a condition of supervised release. It stated in no uncertain terms that § 3583(e)(2) cannot be used to raise forfeited procedural arguments. *See Neal*, 810 F.3d at 520 ("Examples [of barred challenges under *Neal*'s approach] would include arguments that the condition was not adequately explained or linked to the offense of conviction, or that evidence or other

11

information presented at the original sentencing did not provide sufficient support. . . . [T]hose sorts of procedural shortcomings must be raised at the first opportunity or not at all."). And the Seventh Circuit agreed with the outcome in *Lussier*, explaining that § 3583(e)(2) should not be used to bring, in effect, a collateral challenge to a restitution order, "which would evade the detailed statutory scheme for orderly and timely appellate review of sentences, including restitution orders." *Id.* at 517. And for good reason — the statutory scheme limits review not only to ensure finality, but to conserve judicial resources. Allowing an individual to challenge the legality of a condition of supervised release every time he conceived of a new argument would undermine judicial economy.

There is agreement, then, that § 3583(e)(2) at least authorizes challenges on the basis of new or unforeseen developments. Conversely, the consensus is that there is some set of circumstances that do not provide a basis for challenging the legality of a condition of supervised release pursuant to § 3583(e)(2). These common principles make sense of Congress's directives. An individual may not use § 3583(e)(2) as a substitute for an appeal, belatedly raising challenges to the original conditions of supervised release that were available at the time of his initial sentencing. On the other hand, although we cannot anticipate every situation in which a § 3583(e)(2) motion might provide an appropriate vehicle for reconsideration of the terms of supervised release, the statute at least provides an avenue for district courts to consider new, unforeseen, or changed legal or factual circumstances, including those that go to the legality of a sentence. This understanding properly effectuates the balance that Congress struck between finality and flexibility.

12

We note that the text of § 3583(e)(2) does not forbid a court from considering changed legal circumstances in modifying a term of supervised release. To be sure, that statute does not list legality among the permissible factors, but neither does § 3583(c), and no one would argue that § 3583(c) forbids a court from considering whether a condition of supervised release is lawful before imposing it. We also note that changed legal circumstances easily fall within the cross-referenced § 3553(a)(6) factor, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." A new legal rule will inevitably lead to disparities between individuals sentenced prior to the rule and those sentenced after it comes into effect. *See United States v. Johnson*, 228 F. Supp. 3d 57, 63–64 (D.D.C. 2017). *Webb*, 738 F.3d 638, of course does not prohibit a district court from considering such disparities. Nor would permitting a district court to consider changed legal circumstances disrupt Congress's scheme for appellate review. We agree with our friend in concurrence that allowing a court to reconsider the legality of supervised release at the time that it was imposed would frustrate congressional "'intent to encourage timely challenges' under [Fed. R. Crim. P.] 35(a)." Concurring Op. at 21 (quoting *Faber*, 950 F.3d at 358). But a challenge based on new legal circumstances could not have been brought at the time supervised release was imposed and so does not implicate this concern.[4]

---

[4] None of the cases that the concurrence cites hold otherwise. All considered legal challenges available at the time the court imposed the term of supervised release; they did not consider challenges based on changed legal circumstances. Moreover, those cases agree that "[s]ection 3583(e)(2) allows district courts to adjust supervised release conditions to account for new or unforeseen circumstances." *Faber*, 950 F.3d at 359; *accord, e.g.*, *Lussier*, 104 F.3d at 36 (explaining that the defendant's challenge "does not

13

Therefore, we apply the principles outlined above. Doing so, we can only conclude that McLeod's current § 3583(e)(2) challenge is impermissible because it rests on the factual and legal premises that existed at the time of his sentencing. Having not objected at sentencing — even when the district court specifically drew his attention to this issue — and having failed to file a direct appeal, McLeod's current challenge would undermine Congress's detailed scheme of appellate and collateral review. The time for both an objection (which should be raised at sentencing) and a direct appeal (which must be filed within 14 days of the entry of judgment) has long since passed; McLeod may not use § 3583(e)(2) to evade this reality.

IV.

For the foregoing reasons, the appeal is

*DISMISSED.*

---

involve changed circumstances"). We see no reason to treat new legal circumstances differently from new factual circumstances.

AGEE, Circuit Judge, concurring in the judgment:

As George McLeod, III, began to serve his term of supervised release in 2018, he moved under 18 U.S.C. § 3583(e)(2) for the district court to remove his condition of supervised release requiring him to register as a sex offender as directed by his probation officer. He contends this condition was illegally imposed because his underlying convictions do not satisfy the criteria that should have made him subject to registration. On appeal, McLeod asserts that § 3583(e)(2) is an appropriate vehicle for correcting this alleged error that occurred during sentencing.

Because the majority opinion ultimately concludes that McLeod's claim of illegality is not cognizable, I concur in the judgment and resulting dismissal of McLeod's appeal. I write separately, however, because the text and history of 18 U.S.C. § 3583(e)(2) do not authorize a district court to modify a term of supervised release when the motion is based on the alleged illegality of a condition of supervised release. Accordingly, I disagree with the majority opinion's rationale for its decision, which theorizes that some future petitioner could bring a successful § 3583(e)(2) motion based on the claim that a condition of supervised release is illegal.

I.

At the outset, I note my agreement with much of the majority opinion's holding. Specifically, I take no issue with its recitation of what occurred in this case or with its decision not to rely on the appeal waiver as a basis for dismissing McLeod's claim. My disagreement is limited to its conclusion that § 3583(e)(2) can be a vehicle to assert a claim

15

that a condition of supervised release is illegal. As ably and persuasively explained by six of the seven U.S. Courts of Appeals to consider this issue, neither the text nor history of the statute permit the majority opinion's conclusion.

A.

When it enacted the Sentencing Reform Act of 1984 ("the Act"), Pub. L. No. 98-473, 98 Stat. 1987, Congress fundamentally "overhaul[ed] federal sentencing practices." *Tapia v. United States*, 564 U.S. 319, 325 (2011). The Act "abandoned indeterminate sentencing and parole in favor of a system in which Sentencing Guidelines, promulgated by a new Sentencing Commission, would provide courts with 'a range of determinate sentences for categories of offenses and defendants.'" *Id.* In addition, the Act "channeled judges' discretion by establishing a framework to govern their consideration and imposition of sentences." *Id.*; *see also* Orrin G. Hatch, *The Role of Congress in Sentencing: The United States Sentencing Commission, Mandatory Minimum Sentences, and the Search for a Certain and Effective Sentencing System*, 28 Wake Forest L. Rev. 185, 186–92 (1993) (discussing what led a bipartisan majority of Congress to pass the Act, which "fundamentally alter[ed] our nation's sentencing goals and practices," and discussing its key features).

One aspect of the Act was the creation of "supervised release" as "a new form of post-imprisonment supervision." U.S. Sentencing Guidelines Manual, ch. 7, pt. A, intro. comment 2(b); 18 U.S.C. § 3583(a) (providing that district courts have discretion to "include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment"); S. Rep. No. 98-225, at 122–25 (1984), *as*

16

*reprinted in* 1984 U.S.C.C.A.N. 3182, 3305–08. When district courts order a defendant to serve a term of supervised release, the court can—and in some cases must—impose certain conditions of supervised release, as set out in 18 U.S.C. § 3583(d). *See* S. Rep. No. 98-225, at 124, *as reprinted in* 1984 U.S.C.C.A.N. at 3307. These conditions of supervised release encompass requirements such as not committing another crime, making restitution, undergoing treatment programs, registering under the Sex Offender Registration and Notification Act, undergoing drug testing, and other conditions that are consistent with articulated congressional goals. 18 U.S.C. § 3583(d).

Section 3583(e)(2) authorizes district courts to modify (or remove) conditions of supervised release "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)[.]" Courts may entertain a § 3583(e)(2) motion "at any time prior to the expiration or termination of the term of supervised release[.]" *Id.* § 3583(e)(2).[1]

The eight enumerated criteria Congress has instructed courts to consider when deciding whether to modify a condition of supervised release are:

- "the nature and circumstances of the offense and the history and characteristics of the defendant";

---

[1] As the statute appears in context, § 3583(e)(2) provides:

(e) . . . The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—

. . . .

(2) . . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release[.]

17

- "the need for the sentence imposed—"
  - "to afford adequate deterrence to criminal conduct";
  - "to protect the public from further crimes of the defendant; and"
  - "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"

- "the kinds of sentence and the sentencing range established for" the offense in the Sentencing Guidelines, along with any amendments to the Guidelines;

- "any pertinent policy statement" by the Sentencing Commission, "subject to any amendments" made to it by Congress;

- "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and"

- "the need to provide restitution to any victims of the offense."

*Id.* § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

As is evident from the plain language of § 3583(e)(2), district courts are required to exercise their discretion to modify a condition of supervised release based on a balancing of these specific sentencing goals rather than on other factors, such as the underlying lawfulness of imposing the condition of supervised release. Indeed, nothing in the cited statutory language invokes the concept of illegality as a basis upon which to modify or remove a condition of supervised release under § 3583(e)(2). *See United States v. Lussier*, 104 F.3d 32, 34, 35 (2d Cir. 1997) ("The plain language of [§ 3583(e)(2)] indicates that the illegality of a condition of supervised release is not a proper ground for modification under this provision . . . . Conspicuously absent from the list of relevant conditions is the legality of the condition.").

18

B.

Our decision in *United States v. Webb*, 738 F.3d 638 (4th Cir. 2013), confirms that the eight enumerated § 3553(a) factors limit a district court's basis for acting under § 3583(e). *Id.* at 641–42. In *Webb*, we held that a district court did not commit reversible error when it "mentioned" an "intertwined," but unenumerated, § 3553(a) factor as *part* of its discussion of § 3583(e)'s enumerated § 3553(a) factors. *Id.* at 641. The defendant had argued that the court's consideration of "statutorily prohibited factors" rendered his revocation sentence under § 3583(e) procedurally unreasonable. *Id.* at 639. We disagreed, observing that § 3583(e) "does not expressly prohibit a court from referencing other relevant factors omitted from the statute." *Id.* at 641. But we also cautioned that "a district court may not impose a revocation sentence based *predominately* on the [unenumerated factor]," even though we held that "mere reference to such considerations [would] not render [it] procedurally unreasonable when those factors are relevant to, and considered in conjunction with, the enumerated § 3553(a) factors." *Id.* at 642 (emphasis added).

McLeod relies on *Webb* to contend that courts are not restricted to considering only the enumerated § 3553(e) factors when deciding a § 3583(e)(2) motion. But as the majority opinion recognizes, *Webb*'s modest holding "hardly constitutes an embrace of McLeod's position in this case." Maj. Op. at 9 n.3. That said, *Webb* also does more than the majority suggests: it supports the conclusion that illegality cannot serve as the *basis* for a district court's decision under § 3583(e). Specifically, *Webb* recognized that § 3583(e)'s enumerated factors restricted courts from deciding whether to act "based *predominately* on" an unlisted consideration. *Id.* at 642 (emphasis added). *A fortiori*, § 3583(e)'s

19

enumerated factors restrict courts from deciding whether to act based *exclusively* on an unlisted consideration. And that's what McLeod's motion does: he contends that apart from any of § 3553(e)'s sentencing goals, the challenged condition of supervised release should be removed because it was illegally imposed in the first instance. Thus, McLeod's claim rests *exclusively* on a factor *not* referenced in the enabling statute: § 3583(e)(2). Consequently, he is not entitled to relief under it.[2]

## C.

Supporting this textual understanding of § 3583(e)(2) is its contextual history as one part of the changes to a district court's sentencing authority under the Act. Under the prior version of Federal Rule of Criminal Procedure 35(a), district courts could "correct an illegal sentence at any time." Fed. R. Crim. P. 35(a) ("Rule applicable to offenses committed prior to Nov. 1, 1987: The court may correct an illegal sentence at any time[.]"); *see United States v. Little*, 392 F.3d 671, 677 (4th Cir. 2004) (discussing this pre-Act

---

[2] Of course, defendants have other means of challenging a district court's imposition of an allegedly illegal sentence, including an allegedly illegal condition of supervised release. In addition to moving for relief directly in the district court under Federal Rule of Criminal Procedure 35(a), defendants can seek relief in circuit courts as well, assuming they satisfy the statutory criteria for pursing that relief. *Lussier*, 104 F.3d at 36–7. For example, a defendant can challenge the legality of any portion of his sentence—including imposition of any conditions of supervised release—on direct appeal or on collateral review under 28 U.S.C. § 2255. *United States v. Hadden*, 475 F.3d 652, 660 (4th Cir. 2007) ("Section 2255 provides federal prisoners a mechanism, beyond a direct appeal, for challenging the legality of their sentence.").

Although McLeod is likely barred at this point from pursuing other forms of relief, that does not alter the proper analysis of whether he can bring his claim via a § 3583(e)(2) motion. McLeod's plea agreement waiver, as well as his choice not to timely seek relief under any of the above options by arguing the waiver was unenforceable against claims of illegality, are no grounds to allow an end-run around the congressionally constituted framework via a § 3583(e)(2) motion.

version of Rule 35(a)). But the Act set in motion a change to that authority, which now limits the time in which defendants can move to correct an illegal sentence to fourteen days. Fed. R. Crim. P. 35(a). In so doing, Congress "explicitly foreclosed the Rule 35(a) route for obtaining judicial review of an allegedly illegal sentence at any time." *Lussier*, 104 F.3d at 37 (internal quotation marks and alterations omitted). At this same time, Congress enacted § 3583(e)(2), which delineated the circumstances when a district court was authorized to modify a condition of supervised release, required that decision to be based on consideration of the eight enumerated § 3553(a) factors, and omitted any reference to illegality as part of that authorization. *See* 18 U.S.C. § 3583(e)(2); S. Rep. No. 98-225, at 124–25, *as reprinted in* 1984 U.S.C.C.A.N. at 3307–08 (stating that "subsection (e) permits the court, after considering *the same factors considered in the original imposition of a term* of supervised release, to . . . modify . . . the conditions of supervised release" (emphasis added)).

As this historical context for § 3583(e)(2) indicates, Congress' omission of a reference to illegality was "no oversight." *United States v. Faber*, 950 F.3d 356, 358 (6th Cir. 2020). "Construing § 3583(e)(2) as allowing district courts to eliminate an allegedly illegal condition at any time would . . . frustrate Congress's intent to encourage timely challenges" under Rule 35(a). *Id.* At bottom, "[t]he streamlined scheme of sentencing review established by the 1984 Act would be disrupted by the acceptance of [McLeod's] interpretation of [§ 3583(e)(2)]" because "[n]othing in the text or legislative history of [§ 3583(e)] indicates that Congress intended to enact a mini version of the pre-1984 Rule

21

35(a) and make it applicable only to conditions of supervised release." *Lussier*, 104 F.3d at 37.

D.

Lastly, I observe that all but one circuit court to consider this issue have similarly concluded that the straightforward textual and historical analysis described above means that the argument that a condition of supervised release could be modified because of its alleged illegality is not one of the circumstances that falls within § 3583(e)(2)'s scope. The Second, Fifth, Sixth, and Ninth Circuits have each held in published opinions that claims of illegality are not cognizable in a § 3583(e)(2) motion. *Faber*, 950 F.3d at 359; *United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002) ("It would frustrate Congress's intent if this court were to interpret § 3583(e)(2) to authorize a district court to modify or rescind an allegedly illegal condition."); *United States v. Hatten*, 167 F.3d 885, 886 (5th Cir. 1999) (holding § 3583(e)(2) "do[es] not provide a jurisdictional basis for" modifying "the conditions of supervised release on the grounds of illegality"); *Lussier*, 104 F.3d at 34–37.[3]

---

[3] Two additional circuit courts have held in unpublished decisions that challenges to the legality of a condition of supervised release are not cognizable in a § 3583(e)(2) motion. *United States v. McClamma*, 676 F. App'x 944, 948 (11th Cir. 2017) (per curiam) (concluding the absence of illegality or constitutionality on § 3583(e)(2)'s list of "which factors a district court must consider when reviewing a motion to modify a condition of supervised release" means that § 3583(e)(2) "may not be used to challenge the legality or constitutionality of" a condition); *United States v. Nestor*, 461 F. App'x 177, 179 (3d Cir. 2012) (per curiam) (concluding the defendant should have challenged "the reasonableness and legality of the District Court's original setting of the terms and conditions of his supervised release" "either on direct appeal or in his § 2255 motion," and that he "may not now use [§ 3583(e)(2)] to gain review over issues which should have been raised in earlier proceedings"). And in a prior unpublished decision of this Court, we had effectively held the same. *United States v. McMahon*, 225 F.3d 656, 2000 WL 1039473, at *4 (4th Cir. 2000) (unpublished table decision) (holding that the district court erred in granting the

22

To date, only one circuit court—the Seventh Circuit—has held that some claims based on the illegality of a condition of supervised released are cognizable in a § 3582(e)(2) motion. *United States v. Neal*, 810 F.3d 512, 516–20 (7th Cir. 2016). Thus, the circuit "split" unmistakably leans heavily toward the conclusion that illegality is not properly asserted in a § 3583(e)(2) motion to modify the conditions of supervised release. Moreover, the Seventh Circuit's reasoning eschews a textual and historical understanding of the statute in favor of its view that Congress' failure to include "illegality" as an enumerated § 3583(e) factor was sufficient to authorize *some* claims of illegality. *Id.* at 518. In so doing, it purported to strike an "appropriate balance" between its agreement with much of the other circuits' reasoning that § 3583(e)(2) should not be used to "evade the detailed statutory scheme for orderly and timely appellate review of sentences," without completely foreclosing petitions from bringing "serious challenge[s] to the legality of a currently binding condition[.]" *Id.* at 517–20. This sort of non-textual policy-based approach to what claims are authorized under § 3583(e)(2) lacks grounding in the proper respect for statutory text and legislative history, and thus lacks persuasiveness.

For the reasons described above, the text of § 3583(e)(2) limits the circumstances authorizing district courts to modify a condition of supervised release to the enumerated § 3553(a) sentencing factors. A general assertion as to the illegality of a condition is not one of those circumstances, so it cannot be a basis for granting § 3583(3)(2) relief.

---

government's motion to modify an illegal restitution order because § 3583(e)(2) did not authorize modification on this ground).

23

## II.

Because the majority opinion declines to adopt this understanding of when a court is authorized to modify a condition of supervised release under § 3583(e)(2), I cannot join its reasoning. However, because I conclude § 3583(e)(2) does not authorize modification based on an argument that the district court imposed an illegal condition of supervised release, I agree with ultimate result here: that § 3583(e)(2) does not authorize McLeod's claim of illegality. Therefore, I concur in the Court's judgment dismissing this appeal.