**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-1310 and 23-1319
_____

UNITED STATES OF AMERICA

v.

ANTHONY F. D'AMBROSIO,
*Appellant in 23-1310*

UNITED STATES OF AMERICA

v.

ARMANDO ENRIQUE DELGADO,
*Appellant in 23-1319*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court Nos. 1-15-cr-00003-002; 1-15-cr-00003-004)
District Judge: Honorable Christopher C. Conner
_____

Argued on January 31, 2024


Before: CHAGARES, *Chief Judge*, RESTREPO and
FREEMAN, *Circuit Judges*

(Filed: June 26, 2024)

Patrick J. Bannon                    **[Argued]**
OFFICE OF THE UNITED STATES ATTORNEY
Middle District of Pennsylvania
235 North Washington Avenue
P.O. Box 309, Ste. 311
Scranton, PA 18503

Carlo D. Marchioli
OFFICE OF THE UNITED STATES ATTORNEY
1501 NORTH 6TH STREET, 2ND FLOOR
P.O. BOX 202
HARRISBURG, PA 17102

　　　　*Counsel for Appellee*

Edward J. Rymsza, III                **[Argued]**
MIELE & RYMSZA
125 East Third Street
Williamsport, PA 17701
　　　　*Counsel for Appellant D'Ambrosio*

Frederick W. Ulrich        **[Argued]**
OFFICE OF THE FEDERAL PUBLIC DEFENDER
100 Chestnut Street, Ste. 306
Harrisburg, PA 17101
       ***Counsel for Appellant Delgado***

_____

**OPINION OF THE COURT**

_____

RESTREPO, *Circuit Judge*.

A sentencing judge bears the responsibility of depriving or limiting a person's liberty by ordering a period of incarceration or probation. To assist with reintegration into society after a custodial sentence, that judge can also impose conditions of supervised release. Because a sentencing judge imposes these conditions, a sentencing judge must also be permitted to amend them. Accordingly, and for the following reasons, we hold that a district court has the authority to modify an arguably unlawful condition of supervised release raised in a motion pursuant to 18 U.S.C. § 3583(e)(2) when properly challenged below.

**I.**

From 2012 through 2015, a man named Albert Martinez

operated a sex trafficking ring out of the Middle District of Pennsylvania that spanned various states including Rhode Island, New York, Pennsylvania, Maryland, Virginia, West Virginia, Georgia, and Florida. Appellants Anthony D'Ambrosio and Armando Delgado worked for Martinez in various roles: transporting women and girls across state lines, collecting money, providing security, and supplying drugs to the victims.

In March 2015, a federal grand jury indicted Delgado and D'Ambrosio, as well as others involved in the organization, for their involvement in the sex trafficking business.[1] A jury convicted both Delgado and D'Ambrosio in

---

[1] The seven-count Superseding Indictment charged Delgado and D'Ambrosio with the following crimes:

> (1) Sex Trafficking of Children [18 U.S.C. § 1591(a)];
> (2) Transportation of an Individual to Engage in Prostitution [18 U.S.C. § 2421(a)];
> (3) Transportation of a Minor to Engage in Prostitution [18 U.S.C. § 2423(a)];
> (4) Conspiracy to Transport an Individual to Engage in Prostitution [18 U.S.C. § 371];
> (5) Conspiracy to Transport a Minor to Engage in Prostitution [18 U.S.C. § 2423(a)];
> (6) Conspiracy to Distribute and Possess with Intent to Distribute Oxycodone, Cocaine, Heroin, and Marijuana [21 U.S.C. § 846]; and
> (7) Distribution and Possession with Intent to Distribute Oxycodone [21 U.S.C. § 841(a)(1)].

December 2017,[2] and the two subsequently filed post-trial motions.[3] In May and July of 2019, respectively, United States Probation prepared Presentence Investigation Reports for D'Ambrosio and Delgado, which recommended both men comply with the requirements of 34 U.S.C. § 20901, the Sex Offender Registration and Notification Act ("SORNA"), as a condition of supervised release. Sex offender registration is triggered by an individual's conviction for a sex offense.[4] A

[2] At the conclusion of the Government's case, the Government voluntarily dismissed Count 3, Transportation of a Minor to Engage in Prostitution [18 U.S.C. § 2423(a)], for both defendants.

[3] Delgado and D'Ambrosio each filed a motion for judgment of acquittal and a motion for a new trial. On the motions for judgment of acquittal, the District Court vacated the convictions on Count One, and entered judgment of acquittal on Count Five. The District Court denied both motions for a new trial. Thus, Delgado and D'Ambrosio stood convicted of Count Two, Transportation of an Individual to Engage in Prostitution [18 U.S.C. § 2421(a)], Count Four, Conspiracy to Transport an Individual to Engage in Prostitution [18 U.S.C. § 371], and Counts Six and Seven, two controlled substances violations.

[4] A "sex offense" is defined as a criminal offense that (1) has an element involving a sexual act or sexual contact with another; (2) a criminal offense that is a specified offense against a minor; (3) a federal offense under 18 U.S.C. § 1591, or Chapters 109A, 110, or 117; (4) a military offense specified by the Secretary of Defense; or (5) an attempt or conspiracy to commit any of the aforementioned offenses. *See* 34 U.S.C. § 20911(5)(A).

district court must decide, as a matter of law, if that person's conviction qualifies as a sex offense for purposes of imposing SORNA. *United States v. Icker*, 13 F.4th 321, 330 (3d Cir. 2021) (holding that 18 U.S.C. § 3583(d) requires the court to first determine whether the person has been convicted of a sex offense as defined in 34 U.S.C. § 20911(5)(A)).

## A.

At his sentencing in July 2019, Delgado objected to the imposition of SORNA registration as a condition of his supervised release. He argued that his offenses of conviction did not require SORNA registration.[5] The District Court acknowledged that neither the court, counsel, nor Probation knew whether the SORNA requirement applied to Delgado's offenses. As a result, the District Court delegated that determination to Probation, noting that

> we need to further investigate whether your offenses of conviction are qualifying offenses, and frankly at this juncture we simply don't know, but that is a matter for probation to determine and you will obviously be apprised of any registration requirements when you begin to report to the probation office.

J.A. 81.

Delgado filed a direct appeal to this Court in August 2019, appealing his judgment of conviction and sentence. We affirmed. *United States v. Delgado*, 827 F. App'x 180, 183 (3d Cir. 2020). As to Delgado's claim that the District Court

---

[5] Delgado argued that his conviction fails to qualify due to an exception for consensual sex under 34 U.S.C. § 20911(5)(C).

6

erroneously required him to register under SORNA, we concluded that the District Court did not impose any such requirement. *Id.* at 184 ("The Judgement and Commitment Order [did] not mandate that Delgado register as a sex offender under SORNA.").

Following his direct appeal, Probation required Delgado to register under SORNA. In April 2021, Delgado challenged that condition in a motion pursuant to § 3583(e)(2). The District Court stayed the proceedings pending this Court's ruling in *United States v. Icker*, which held that 18 U.S.C. § 3583(d) requires the court to determine, as a matter of law, whether a person has been convicted of a sex offense as defined in 34 U.S.C. § 20911(5)(A). 13 F.4th at 330.

In February 2023, the District Court denied Delgado's § 3583(e)(2) motion. Despite "acknowledging the facial unconstitutionality of the challenged condition" in light of *Icker*, J.A. 8, the District Court held it "lack[ed] jurisdiction to consider [Delgado's] legal challenge to his obligation to comply with SORNA," *id.* at 9. It reasoned that "challenges to the legality of a condition of supervised release may not be raised in a Section 3583(e)(2) motion." *Id.*

Delgado timely appealed.

**B.**

Unlike Delgado, D'Ambrosio failed to object to the SORNA registration requirement at his February 2020 sentencing. The only question that arose regarding SORNA pertained to the length of D'Ambrosio's registration. *See* J.A. 94 ("The only question that I have [ ] about [ ] SORNA . . . is it a Tier 1? Is it a Tier 2? Or is it a Tier 3 requirement?"). His counsel confirmed on the record that "as a result of that conviction [ ] there would most likely be as part of [ ] supervised release some SORNA requirements.". J.A. 94.

7

Although D'Ambrosio now asserts that "questions arose by the parties and the [D]istrict [C]ourt regarding the applicability of SORNA at all," D'Ambrosio Br. at 5, the record reflects no such questioning. Instead, his counsel affirmed its applicability, noting that "[he] certainly recognize[d] that this [was] a SORNA offense." *Id.* As a result, the District Court required D'Ambrosio to comply with SORNA as a condition of supervised release.

D'Ambrosio did not file a direct appeal. He first challenged the SORNA requirement in October 2021 via a pro se motion, followed by a June 2022 counseled § 3583(e)(2) motion to modify. In February 2023, the District Court denied D'Ambrosio's § 3583(e)(2) motion on the same grounds as Delgado's denial. D'Ambrosio timely appealed and we review both cases together.

## II.

As a threshold matter, we must address our jurisdiction to review the District Court's denial of a motion filed pursuant to 18 U.S.C. § 3583(e)(2). The District Court had subject matter jurisdiction of these underlying criminal cases under 18 U.S.C. § 3231. *United States v. Styer*, 573 F.3d 151, 153 n.2 (3d Cir. 2009). Section 1291 grants appellate jurisdiction "from all final decisions of the district courts." 28 U.S.C. § 1291. The District Court's § 3583(e)(2) denials in these cases constituted final decisions, closing the criminal cases below. *See, e.g.*, *United States v. Rodriguez*, 855 F.3d 526, 530–31 (3d Cir. 2017) (determining appellate jurisdiction in the context of Section 3582(c)(2) because "[f]inal judgment in a criminal case means sentence" and "[l]ike sentencing judgments, rulings on Section 3582(c)(2) motions are 'unquestionably final decisions of [a] district[] court because they close the

8

criminal cases once again.'" (alterations in original) (internal citations omitted)).

Nevertheless, our Court has yet to address whether we possess jurisdiction over appeals concerning a district court's denial of an individual's § 3583(e)(2) motion to modify conditions of supervised release. We have, however, held that we exercise jurisdiction over the imposition of additional conditions of supervised release raised in a § 3583(e)(2) motion. *See United States v. Wilson*, 707 F.3d 412, 414 (3d Cir. 2013) (holding that appellate jurisdiction exists when appealing an order modifying conditions of supervised release under 18 U.S.C. § 3583(e)(2); *United States v. Murray*, 692 F.3d 273, 278 (3d Cir. 2012) (holding 28 U.S.C. § 1291 to grant jurisdiction over appeals taken from a district court order adding a condition of supervised release).

Given that we possess jurisdiction to review the imposition of additional conditions of supervised release, it would be prejudicial to defendants to decline jurisdiction when reviewing the removal of such conditions. We thus exercise appellate jurisdiction pursuant to § 1291 to review a district court's denial of a § 3583(e) motion.

## III.

Before reaching the merits of the appeals—the District Court's finding that it lacked subject matter jurisdiction to modify conditions of supervised release—we must review the District Court's delegation of the SORNA registration condition to Probation. We review for abuse of discretion. *See Wilson*, 707 F.3d at 414; *see also United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (internal citations omitted).

"A condition [of supervised release] is within the court's discretion if two criteria are met. First, the condition must be reasonably related to the factors set forth in 18 U.S.C. §

9

3553(a)(1) & (2)(B)-(D). . . . Second, a condition must involve no greater deprivation of liberty than is reasonably necessary to achieve the deterrence, public protection and/or correctional treatment for which it is imposed." *Loy*, 237 F.3d at 256 (internal citations omitted). Thus, "[a]n abuse of discretion can occur if a district court fails to apply the proper legal standard." *Melvin*, 978 F.3d at 52 (brackets, internal citations, and quotations omitted).

When imposing SORNA as a condition of supervised release for Delgado, the District Court acknowledged that it did not know, as a matter of law, whether Delgado's conviction qualified as a sex offense triggering SORNA registration. Instead of undertaking that legal determination, the District Court improperly delegated that responsibility to Probation. As it later admitted in its order denying the § 3583(e)(2) motion, "it is beyond the power of Article III courts to delegate the duty of determining who is a sex offender to the [P]robation office, Bureau of Prisons or state agency." J.A. 6 (quoting *Icker*, 13 F.4th at 330)). The District Court failed to make the same legal determination as to D'Ambrosio's conviction and likewise acknowledged that this error was facially unconstitutional.

The District Court's delegation of SORNA as a condition of supervised release, for both Delgado and D'Ambrosio, is therefore invalid. Without knowing if SORNA applies as a matter of law, the requirement unfairly restricts both Appellants' fundamental rights. Because the District Court abused its discretion, we remand for it (1) to reconsider if Appellants' offenses of conviction qualify as sex offenses under 34 U.S.C. § 20911(5)(A) triggering SORNA registration and (2) to engage in a § 3553(a) analysis to determine the necessity of SORNA as a condition of supervised release.

10

**IV.**

We now review de novo the District Court's conclusion that it lacked jurisdiction to consider a motion pursuant to 18 U.S.C. § 3583(e)(2) based on the legality of a supervised release condition.[6] *See Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007).

**A.**

Supervised release is a form of post-imprisonment supervision provided for by statute at 18 U.S.C. § 3583. The purpose of supervised release is not to punish. Rather, it should "fulfill[] rehabilitative ends" and is intended "to assist

---

[6] The District Court's decision to frame this issue as one of "jurisdiction" misses the mark. "Jurisdictional requirements mark the bounds of a 'court's adjudicatory authority.'" *Culp v. Comm'r of Internal Revenue*, 75 F.4th 196, 200 (3d Cir. 2023) (quoting *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022)). Unmet jurisdictional requirements "lock[] the courthouse doors." *Jaludi v. Citigroup & Co.*, 57 F.4th 148, 151 (3d Cir. 2023). For that reason, we "do not apply the 'jurisdictional' label casually" and only treat a provision as jurisdictional if Congress "clearly states" as much. *Culp*, 75 F.4th at 200–01 (citations omitted). Here, § 3583(e)(2) appears to limit the court's adjudicatory capacity by restricting its decision-making to "any time prior to the expiration or termination of the term of supervised release." But the provision does not contain any other express jurisdictional language. The question then, is not whether the District Court lacks power to adjudicate the defendants' motions. Rather, it is simply whether the statute permits a district court to consider the motion.

individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000); *see also United States v. Sheppard*, 17 F.4th 449, 454 (3d Cir. 2021) ("The primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." (brackets, internal citations, and quotations omitted)); S. Rep. No. 98–225, at 124 (1983) (indicating that the "primary goal" of supervised release is to rehabilitate)). Individuals returning to their communities following a period of incarceration face countless barriers: housing insecurity; access to health care; difficulty finding lawful employment; and emotional obstacles with family reunification. The sentencing judge bears the burden of crafting a sentence as well as a period of supervised release that not only deters future recidivism, but also facilitates successful reentry into society.

When initially imposing conditions of supervised release, § 3583(c) instructs the district court to consider certain factors set forth in § 3553. These factors include: (1) the nature and circumstances of the offense and the individual's history and characteristics; (2) the need for the sentence to afford adequate deterrence, protect the public, and provide the individual with educational training, medical care, or other correctional treatment; (3) the Guidelines range; (4) the pertinent policy statements of the Sentencing Commission; (5) the need to avoid unwarranted sentencing disparities; and (6) the need to provide restitution. 18 U.S.C. § § 3583(c); 3553(a)(1)–(2), (a)(4)–(7). Although the statute does not explicitly direct a sentencing judge to consider the rehabilitative needs of a person, the nature and circumstances of the offense, as well as a that person's personal history, often inform these needs.

Following sentencing, the opportunities to challenge a sentence or conditions of a sentence are limited. For example,

a defendant may file: (1) a direct appeal; (2) a timely motion pursuant to Federal Rules of Criminal Procedure 35(a) –(c); or (3) a petition to vacate an illegal sentence under 28 U.S.C. § 2255. Each of these avenues includes temporal and procedural restrictions. In addition, § 3583(e)(2) grants a District Court broad discretion to "modify, reduce, or enlarge the conditions of supervised release, *at any time* prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2) (emphasis added). But a District Court must first "consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *Id.*

Although § 3583(e)(2) provides an additional pathway to challenge conditions of supervised release, "[a]n individual may not use § 3583(e)(2) as a substitute for an appeal, belatedly raising challenges to the original conditions of supervised release that were available at the time of his initial sentencing." *United States v. McLeod*, 972 F.3d 637, 643–44 (4th Cir. 2020); *see also United States v. Nestor*, 461 F. App'x 177, 179 (3d Cir. 2012) ("[A defendant] may not [] use section 3583(e)(2) to gain review over issues which should have been raised in earlier proceedings."). We refuse to read § 3583(e)(2)'s "at any time" language as a detour from other procedural avenues. Requiring individuals to exhaust all timely challenges provides a necessary procedural check to the potentially endless challenges that might otherwise be available pursuant to § 3583(e)(2).

**B.**

Assuming a person properly exhausts all challenges to the legality of a condition of supervised release, we hold that a district court may consider legality as grounds for modification in a § 3583(e)(2) motion.

Courts take different positions with respect to the scope of § 3583(e)(2). For example, some Courts of Appeal have found that illegality does not provide a proper ground for a § 3583(e)(2) motion,[7] while others have held that § 3583(e)(2) permits challenges based on legality in some circumstances.[8] Decisions denying challenges to legality are primarily based on two reasons: (1) § 3583(e)(2)'s enumerated factors that a district court must consider constitute an exclusive list of factors, of which legality is not included;[9] and (2) permitting a challenge based on legality would undermine the overall "scheme of appellate and collateral review" established by

---

[7] *See, e.g.*, *United States v. Faber*, 950 F.3d 356, 358–59 (6th Cir. 2020); *United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002); *United States v. Hatten*, 167 F.3d 884, 885 (5th Cir. 1999); *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997).

[8] *See, e.g.*, *McLeod*, 972 F.3d at 644 (permitting § 3583(e)(2) challenges based on legality on "the basis of new or unforeseen developments" and not "as a substitute for a [belated] appeal"); *United States v. Neal*, 810 F.3d 512, 518 (7th Cir. 2016) (holding that § 3583(e)(2) may be used to challenge legality, even after the time for appellate review has ended).

[9] *See, e.g.*, *Gross*, 307 F.3d at 1044 ("Conspicuously absent from this list of relevant factors is illegality."); *Hatten*, 167 F.3d at 886 ("The enumerated factors that the court must consider in making a modification determination . . . do not include a consideration of the legality of the supervised release itself."); *Lussier*, 104 F.3d at 34 ("The plain language of subsection 3583(e)(2) indicates that illegality of a condition of supervised release is not a proper ground for modification under this provision.").

Congress.  *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997).

First, although § 3583(e)(2) does not explicitly list legality as a factor which must be considered, it also does not prohibit legality as a consideration.  Legality is at the heart of every decision made by a judge.  To forbid a judge from considering legality would render the position, and every judicial determination, virtually meaningless.  The legality of sentences and conditions of supervised release is a necessary and obvious consideration; nothing in the text of § 3583(e)(2) explicitly prevents its consideration.

Looking at a separate subsection of § 3583 supports this conclusion.  Subsection § 3583(c) lists the factors that a court must consider when initially imposing a condition of supervised release.  Like § 3583(e)(2), § 3583(c) also omits any mention of the condition's legality.  But it would make no sense to say that a court, in imposing a supervised release condition, is prohibited from considering whether that condition is lawful.

Second, we acknowledge the concern shared among our sister Circuits regarding the use of § 3583(e)(2) as a "backdoor [] challenge", *Gross*, 307 F.3d at 1044 (internal citations omitted), which "would evade the detailed statutory scheme for orderly and timely appellate review," *Neal*, 810 F.3d at 517. Nevertheless, we agree with the Fourth Circuit's decision in *United States v. McLeod*, which highlighted the balance between finality and flexibility.   972 F.3d at 642–43. Individuals must first exhaust all timely challenges and cannot "raise forfeited procedural arguments" via a § 3583(e)(2) motion years later.  *Id.* at 643.  But Congress also implicitly recognized the need for flexibility when including the "at any time" language in § 3583(e)(2).  The need for flexibility is particularly important when evaluating conditions of

15

supervised release, which may change over time as a person's rehabilitative needs evolve. *See Murray*, 692 F.3d at 278 ("[P]robation conditions should be subject to modification, for the sentencing court must be able to respond to changes in the probationer's circumstances as well as new ideas and methods of rehabilitation.") (alteration in original) (quoting Fed. R. Crim. P. 32.1(b) advisory committee's note)).

## C.

Applying the principles and restrictions discussed above, we remand for the District Court to reconsider Appellants' § 3583(e)(2) motions, with the understanding that Delgado and D'Ambrosio present different procedural histories. Delgado and D'Ambrosio's § 3583(e)(2) motions challenged the applicability of the imposed SORNA condition on the basis that their underlying convictions qualify for an exception to SORNA's registration requirements. These challenges raise not only legal questions, but factual ones. Because factfinding falls squarely within the purview of the district court, we defer the review of the underlying argument to the District Court on remand. *See Pullman-Standard v. Swint*, 456 U.S. 273, 291–92 (1982).

## V.

The District Court erred as a matter of law in two ways: (1) improperly delegating its Article III powers to Probation to determine if SORNA applied to Appellants' convictions and (2) concluding that it lacked jurisdiction pursuant to § 3583(e)(2) in denying Appellants' motions to modify conditions of their supervised release. We will therefore reverse the District Court's orders and remand for further proceedings consistent with this opinion.