**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1857
_____

UNITED STATES OF AMERICA

v.

SHAWN TRIBBETT, also known as Marsh, also known as Mellow,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:15-cr-00171-001)
District Judge:  Honorable Renée M. Bumb
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 25, 2025
_____

Before:  BIBAS, PHIPPS, and AMBRO, *Circuit Judges*

(Filed: April 1, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

After violating the conditions of his supervised release for the second time by repeatedly failing drug tests, Shawn Tribbett received a sentence of 14 months' imprisonment followed by 30 months' supervised release. He now disputes only the substantive reasonableness of the imposition of the 30 months' supervised release. In reviewing the District Court's ruling for an abuse of discretion, we will affirm the sentence.

## BACKGROUND

In 2016, after Tribbett pleaded guilty to four drug- or gun-related offenses, he was sentenced for each count.[1] Those sentences ran concurrently so that altogether Tribbett would serve 70 months in prison followed by three years' supervised release. Each of those sentences imposed several conditions on his supervised release. Among those, Tribbett was prohibited from committing any federal, state, or local crimes while on supervision. He also had to refrain from the illegal possession or use of drugs and the use of alcohol.

In October 2020, after he had served the prison sentence and been on supervised release for a little over a year, Tribbett tested positive for four different narcotics. Over the next three months, he failed two more drug tests.

Tribbett's situation deteriorated in March 2021. On March 12, he skipped a random drug test. On March 18, he tested positive for three controlled substances. And on March 30, he was arrested for possession with intent to distribute fentanyl.

---

[1] Those charges consisted of one count of conspiracy to engage in firearms trafficking, *see* 18 U.S.C. § 371, for which he received a 60-month prison sentence followed by three years' supervised release; two counts of being a felon in possession, *see id.* § 922(g)(1), for each of which he received a 70-month prison sentence followed by three years' supervised release; and one count of distribution and possession with intent to distribute cocaine, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C), for which he received a 70-month prison sentence followed by three years' supervised release.

Until that arrest, Tribbett's probation officer had been reporting Tribbett's infractions to the District Court but was consistently recommending against any punitive action. In response to Tribbett's arrest for fentanyl possession with intent to distribute, however, the probation officer petitioned the District Court to issue a warrant for his arrest, and it did so.

After Tribbett's arrest, the District Court held a hearing to address whether Tribbett's supervised release should be revoked and, if so, what his prison sentence should be. The District Court resolved both of those issues against Tribbett's continued supervised release. It determined that he had violated the conditions in each of his four supervised release sentences and revoked his supervised release. The District Court then sentenced Tribbett to four six-month prison terms, to be served consecutively, along with four 24-month terms of supervised release, to be served concurrently. Those terms of supervised release were subject to similar crime and drug and alcohol conditions as those that governed Tribbett's initial terms of supervised release.

As before, Tribbett served the prison term and began his term of supervised release. But three days into the supervised release, on January 10, 2023, Tribbett tested positive for alcohol. Between February 15 and May 6, he failed eight drug tests. Even with awareness of those violations, Tribbett's probation officer did not request any intervention by the District Court on the ground that it would interfere with Tribbett's admission to an inpatient substance abuse rehabilitation program.

Tribbett was admitted to that program on May 15. Twelve days later, he was discharged for threatening staff and residents with violence. At that point, his probation officer petitioned the District Court for an arrest warrant. The District Court issued the warrant, and Tribbett was taken into custody.

This time, he was charged with three violations of the conditions of his supervised release. Those were a Grade A violation for possession with intent to distribute crack cocaine, a Grade B violation for possession of crack and methamphetamine, and a Grade C violation for being discharged from an inpatient treatment facility. At a hearing, Tribbett pleaded guilty to the Grade B violation, and the District Court dismissed the Grade A and the Grade C violations at the Government's request.

Based on the Grade B violation, the District Court revoked Tribbett's supervised release. It also sentenced him to a prison term of 14 months on each of the four 2016 drug- or gun-related offenses, to run concurrently, followed by 30 months' supervised release on a single count and 16 months on the other three, to run concurrently.

Through a notice of appeal, Tribbett invoked this Court's appellate jurisdiction, and he now disputes only the substantive reasonableness of the 30-month term of supervised release. *See* 18 U.S.C. § 3221.

## DISCUSSION

To succeed in his challenge, Tribbett must establish that "no reasonable sentencing court would have imposed the same sentence" for the reasons provided. *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). He cannot do so.

The District Court imposed the 30-month term of supervised release to deter Tribbett from using illegal drugs, to allow him to continue to receive drug and alcohol treatment, and to help structure his life. Those considerations are permissible bases for imposing a term of supervised release. *See United States v. Sicher*, 239 F.3d 289, 291–93 (3d Cir. 2000) (implying that the conditions on supervised release may include promoting rehabilitation from drug addiction); *see also United States v. D'Ambrosio*, 105 F.4th 533, 538 (3d Cir. 2024) (explaining that supervised release is designed to "'fulfill[]

4

rehabilitative ends' and is intended 'to assist individuals in their transition to community life.'" (alteration in original) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000))).[2]

Even still, Tribbett now argues that the District Court was unreasonable. As he sees it, in light of his history of failing to comply with the conditions of supervised release, he was likely to violate those terms again, and so sentencing him to supervised release would "trap[] him in an endless cycle of release, inevitable violation, and additional punishment." Appellant's Opening Br. 22. But there is no rule that a defendant's pattern of noncompliance with supervised-release conditions renders imposing supervised release unreasonable. *Cf. United States v. Clark*, 726 F.3d 496, 502–03 (3d Cir. 2013). Thus, even in light of Tribbett's multiple violations of multiple terms of supervised release, the District Court did not err by imposing a 30-month term of supervised release.

### CONCLUSION

For the reasons above, we will affirm the sentence imposed by the District Court.

---

[2] *See generally* 18 U.S.C. § 3583(c) (directing that sentencing courts, "in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release, [to] consider the factors set forth in [§ 3553 sub]section[s] . . . (a)(2)(B), [and] (a)(2)(D)"); *id.* § 3553(a)(2)(B) (directing the sentencing court to consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"); *id.* § 3553(a)(2)(D) (directing the sentencing court to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").